IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HERBERT JAMES, | * | |
| | * | |
| v. | * | Civil No. JFM-15-654 |
| | * | |
| SANTANDER CONSUMER USA, INC. | * | |

******

**MEMORANDUM**

Herbert James originally filed this case against Santander Consumer USA, Inc. ("Santander") in the Circuit Court for Baltimore City. (ECF No. 2). Santander is in the business of repossessing and selling automobiles owned by individuals who have defaulted on their loans and James' car was repossessed and sold by Santander. In James' complaint, styled as a class-action, he alleges a variety of claims against Santander stemming from its alleged failure to send redemption notices, pre-sale notices, and post-sale accountings during the repossession as required by Maryland law. Presently pending before this court are James' motion to remand (ECF No. 11) and Santander's motion to compel non-class arbitration. (ECF No. 15).

**BACKGROUND**

James is a citizen of Washington D.C. (ECF No. 2 at ¶ 8). Santander is a corporation incorporated in Illinois with its principal place of business in Dallas, Texas. *Id.* at ¶ 9. In November 2013, James purchased a 2014 Nissan Altima from Herb Gordon Nissan, a vehicle dealer in Maryland. *Id.* at ¶ 12. James financed his purchase using a "Retail Installment Sale Contract" ("RISC"), which was later assigned to Santander. *Id.* at ¶¶ 13, 16.

According to James, he made "numerous monthly payments" to Santander, which included "interest, costs, fees and other charges." *Id.* at ¶ 17. Sometime thereafter, presumably

1

because James stopped making the monthly payments, Santander seized and repossessed the vehicle. *Id.* at ¶ 18. Santander then sold the vehicle. *Id.* at ¶ 21.

The RISC is governed by the Credit Grantor Closed End Credit provisions found in section 12, subtitle 10 of the Maryland Commercial Law Code ("CLEC"). *Id.* at ¶ 13. James alleges that Santander violated a variety of these provisions in its seizure, repossession, and resale of the vehicle. First, James alleges that Santander did not provide a notice of his right to redeem or his rights upon resale as required by CLEC § 12-1021(e). *Id.* at ¶¶ 19, 20. Second, James alleges that Santander did not provide James a pre-sale notice, at least ten days prior to the sale by certified mail, return receipt requested, indicating the time and place of the sale, as required by CLEC § 12-1021(j)(1)(ii). *Id.* at ¶ 22. Third, James alleges that after the sale, Santander did not a make a full post-private sale accounting to him, in violation of CLEC § 12-1021(j)(2). *Id.* at ¶ 24. James also brings claims for breach of contract, restitution and unjust enrichment, a claim under the Maryland Consumer Protection Act, and seeks declaratory and injunctive relief. He styles his complaint as a class action.

## ANALYSIS

I.  *Motion to Remand*

Shortly after James filed his complaint, Santander removed the suit to this court. (ECF No. 1). James then filed a motion to remand (ECF No. 11), which Santander opposes (ECF No. 22). Under the Class Action Fairness Act ("CAFA"), federal courts have jurisdiction over a class when it is: (1) comprised of over 100 members, 28 U.S.C. § 1332(d)(5)(B); (2) any member of the class is a citizen of a state different from the defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the amount in controversy exceeds $5 million, excluding interest and costs, 28 U.S.C. § 1332(d)(2). In the Fourth Circuit, a defendant seeking removal must initially only "*allege* federal jurisdiction with a short plain statement . . . [however] when removal is challenged, the

removing party bears the burden of demonstrating that removal jurisdiction is proper." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (internal citation omitted) (emphasis in original).[1]

James argues that Santander invents its own class in order to confer federal jurisdiction. James cites the definition of the class provided by Santander—"all persons to whom it sent a redemption notice, pre-sale notice, or post-sale accounting." (ECF No. 11-1 at p. 5) (citing ECF No. 1 at ¶ 11). James emphasizes that this is not the same class he defined in his complaint. *Id.* at pp. 13–14.

James also disputes Santander's calculation of the amount in controversy. Specifically, James argues that Santander incorrectly relies on the amount James' loan was subject to in interest, fees, and other charges, rather than "what was actually charged to or collected from him." *Id.* at p. 7. James argues that the amount his loan was "subject to" is "completely irrelevant" because once his vehicle was repossessed and sold he was no longer subject to the fees. *Id.* at p. 8. By then using that number as an average for all members of the class, James argues that Santander inflates the actual amount in controversy to meet the $5 million threshold imposed by CAFA.[2]

---

[1] The Fourth Circuit has held that, at least for the amount in controversy, the removing party has the burden to prove the requirement by a preponderance of the evidence. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 (4th Cir. 2009).

[2] James also argues that Santander has "plead[][ed] itself out of CAFA jurisdiction by denying that the Class defined by Plaintiff contains any members" (ECF No. 11-1 at p. 15) because in its notice of removal, Santander denies that it ever failed to comply with the CLEC. (ECF No. 1 at ¶ 6). James' argument that this denial is an admission that the class contains zero members lacks merit—holding so would lead to the perverse result that a party seeking removal is required to admit liability in order to confer federal jurisdiction. *See Kemper v. Quicken Loans, Inc.,* 5:13-Civ-91, 2013 WL 5504152, at *3 (N.D.W. Va. Oct. 2, 2013) (rejecting that in establishing the amount in controversy a party seeking removal had to, in essence, "confess liability" by providing a specific formula or methodology to assess damages) (internal citation omitted).

In its opposition, Santander maintains that the class should be defined as "all consumers who entered into a retail installment contract which elects CLEC whose vehicles were repossessed and sold by Santander." (ECF No. 22 at p. 8). According to Santander, because at one point in the complaint, James alleges that Santander "uniformly and systemically failed to comply with statutory requirements for providing notices in connection with the repossession and sale of vehicle[s]," the class must include all consumers whose vehicles were ever repossessed by Santander. (ECF No. 22 at pp. 7–8) (citing Complaint at ¶ 3).

Santander also, citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), offers evidence to support its claim that it has satisfied the amount in controversy. James submits a declaration filed by Wayne Nightengale, its Executive Vice President of Servicing Operations. (ECF No. 22-1). Nightengale reviewed Santander's records for the past three years (from February 1, 2012 through February 2, 2015), and states that during that period Santander repossessed and sold 6,470 vehicles that were purchased under a retail installment contract electing the CLEC. *Id.* at ¶¶ 4, 6. Nightengale also estimates that $6,800 was the "average finance charge paid by the putative class" over the three-year period. *Id.* at ¶ 7. Santander relies upon the finance charge, because "[u]pon a violation of CLEC, the civil penalties provisions of CLEC provide that a creditor may not collect any interest (i.e., the finance charge), costs, fees, and other charges and may be required to repay the borrower three times the amount of interest, fees, and charges collected." (ECF No. 22 at p. 10) (citing Md. Code Ann., Com. Law § 12-1018(a)(2), (b)). Santander then multiplies the number of vehicles by the finance charge to conclude that the amount in controversy is over 43 million dollars.[3] *Id.*

---

[3] Santander also argues that even if it calculated the amount in controversy by relying on the amount of fees incurred by James ($2,332.53), the total amount in controversy would still exceed the $5 million threshold. (ECF No. 22 at p. 10).

4

I find that Santander has not met its burden. I reach this conclusion for a simple reason: in its notice of removal, and its memorandum in opposition to remand, Santander relies on the class it defines—rather than the class defined by James in his complaint. Given this, Santander has not offered any evidence concerning the class defined in James' complaint. I briefly explain the distinction below.

The class in James' complaint is explicitly stated—it is only to include those individuals whose cars were repossessed by Santander under CLEC contracts who did not receive proper pre- and post-sale notifications. (ECF No. 2 at ¶ 31). James alleges that this includes "many" individuals, but does not state how many individuals it is. *Id.* at ¶ 5. James also does not allege a total amount of damages sought by the class, only that the damages sought in the aggregate exceed $75,000. *Id.* at ¶ 80. At no point in his complaint does James assert that the class includes all customers with CLEC contracts whose cars were repossessed by Santander.

Santander defines a different class by taking the phrase "uniformly and systemically" out of context. The entire phrase Santander relies on states: "Santander uniformly and systematically failed to comply with the statutory requirements for providing notice in connection with the repossession and sale of the vehicles of Named Plaintiff and the Class." (ECF No. 2 at ¶ 3). Santander argues that this must mean that *all persons* whose vehicles it repossessed under CLEC contracts are included in this class. But this is defied by the text of the complaint. This sentence, when read in full, indicates only that Santander violated the law with respect to class members as defined by James—all people who did not receive the proper pre- and post-sale notifications.

Santander uses this false premise as the basis for the additional evidence it offers in support of jurisdiction. Nightengale cites all vehicles repossessed under CLEC contracts in his calculation. He does not offer any evidence indicating what percentages of those repossessions

5

were conducted without the sending of proper notifications. The timeframe used by Santander is also problematic. Nightengale's estimation is based on all vehicles repossessed in the past three years. (ECF No. 22-1 at ¶ 4). In James' complaint, however, he limits the class by excluding all accounts satisfied on or before August 15, 2014. (ECF No. 2 at ¶ 31). According to James, he maintains this constraint in order to satisfy the statute of limitations. (ECF No. 27 at p. 10).

The existence of federal question jurisdiction is determined at the time the complaint is filed, and it is the plaintiff, not the defendant, who defines the class in the complaint. *See Bartnikowski*, 307 Fed. App'x at 737 (stating that "CAFA does not change the proposition that the plaintiff is the master of her own claim" and "a removing defendant can't make the plaintiff's claim for him") (internal citations and quotations omitted). Santander cannot define the class more broadly than the complaint does in its notice of removal in order to confer jurisdiction.[4] Accordingly, James' motion is granted[5] and the case is remanded to the Circuit Court for Baltimore City.[6]

---

[4] My reasoning tracks that of a district court within this Circuit. In *Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519 (S.D.W. Va. 2011), the court rejected a defendant's attempt to define a class more broadly than the complaint in order to confer federal jurisdiction. The plaintiff alleged that the defendant violated provisions of the West Virginia Consumer Credit Protection Act ("WVCCPA") as holder and servicer of his mortgage loan, and brought an action on behalf of himself and a similarly-situated class. *Id.* at 521–22. The defendant, in his notice of removal, based his calculation of the number of members in the class and the amount in controversy on all loans it serviced in West Virginia during the relevant time frame. The plaintiff's complaint, however, specified that only individuals for whom the defendant had also violated the WVCCPA in servicing their loans were to be members. *Id.* at 522–24. The court rejected the defendant's argument, given its departure from the specific class defined in the complaint. *See id.* at p. 526 ("Reading the complaint as a whole, the proposed class can only consist of person in West Virginia whose loans were serviced by EMC [the defendant] in violation of these WVCCPA provisions. The complaint very specifically describes [the class] . . . . Accordingly, EMC's assertion that each and every West Virginia citizen whose loan was serviced by EMC is a member of the proposed class is unfounded.").

[5] My conclusion reaches the opposite result as a recent opinion by one of my colleagues involving Santander. *See Swan v. Santander Consumer USA*, Civ. PJM 14-1906, 2015 WL 1242767 (D. Md. Mar. 17, 2015). In that case, however, the dispute over removal jurisdiction

II.  *Motion to Compel Arbitration*

Because I am granting the motion to remand, I do not rule on the motion to compel arbitration. It is denied as moot.

## CONCLUSION

For the foregoing reasons, the motion to remand is granted (ECF No. 11), and the motion to compel arbitration (ECF No. 15) is denied. A separate order follows.

_____08/12/2015_____  _____/s/_____
Date                                             J. Frederick Motz
                                                 United States District Judge

---

centered over the calculation of the amount in controversy. *Id.* at ** 3, 4. Santander did not, as here, redefine the class as pled in the complaint.

[6] If upon remand it is apparent that the jurisdictional requirements are satisfied and James acted in bad faith to prevent removal, I would entertain another motion for removal outside the one year limitations period. *See* 28 U.S.C. § 1446 (c).